MEMORANDUM OF DECISION
 

 THOMAS B. DONOVAN, Bankruptcy Judge; PETER H. CARROLL, Chief Bankruptcy Judge; ROBIN L. RIBLET, Bankruptcy Judge; VINCENT P. ZURZOLO, Bankruptcy Judge; ERNEST M. ROBLES, Bankruptcy Judge; ERITHE A. SMITH; Bankruptcy Judge; MEREDITH A. JURY, Bankruptcy Judge; ELLEN CARROLL, Bankruptcy Judge; SHERI BLUEBOND, Bankruptcy Judge; MAUREEN A. TIGHE, Bankruptcy Judge; THEODOR C. ALBERT, Bankruptcy Judge; RICHARD M. NEITER, Bankruptcy Judge; VICTORIA S. KAUFMAN, Bankruptcy Judge; CATHERINE E. BAUER, Bankruptcy Judge; DEBORAH SALTZMAN, Bankruptcy Judge; MARK S. WALLACE, Bankruptcy Judge; SCOTT C. CLARKSON, Bankruptcy Judge; SANDRA KLEIN, Bankruptcy Judge; GERALDINE MUND, Bankruptcy Judge; KATHLEEN THOMPSON, Bankruptcy Judge.
 

 INTRODUCTION
 

 This case is about equality, regardless of gender or sexual orientation, for two people who filed for protection under Title 11 of the United States Code (Bankruptcy Code). Like many struggling families during these difficult economic times, Gene Balas and Carlos Morales (Debtors), filed a joint chapter 13 petition on February 24, 2011. Although the Debtors were legally married to each other in California on August 20, 2008,
 
 [1]
 
 and remain married today, the United States Trustee (sometimes referred to simply as “trustee”) moved to dismiss this case pursuant to Bankruptcy Code § 1307(c) (Motion to Dismiss), asserting that the Debtors are ineligible to file a joint petition based on Bankruptcy Code § 302(a) because the Debtors are two males. The issue presented to this court is whether the Debtors, who are legally married and were living in California at the time of the filing of their joint petition, are eligible to file a “joint petition” as defined by § 302(a). As the Debtors state, “[T]he only issue in this Bankruptcy Case is whether some legally married couples are entitled to fewer rights than other legally married couples, based solely on a factor (the gender and/or sexual orientation of the parties in the union) that finds no support in the Bankruptcy Code or Rules and should be a constitutional irrelevancy.” Debtors’ Opp. 5:24-28. In this court’s judgment, no legally married couple should be entitled to fewer bankruptcy rights than any other legally married couple.
 

 BACKGROUND
 

 It is undisputed that the Debtors are a
 
 *570
 
 lawfully married California couple
 
 [2]
 
 who were married at the time they filed their bankruptcy petition. The Debtors have undertaken a lifelong commitment to each other, and wish to have their marital relationship accorded treatment in this court equal to the treatment of opposite-sex married couples.
 
 [3]
 
 The Debtors came to this court seeking to restructure and repay their debts under chapter 13 of the Bankruptcy Code following numerous episodes of illness, hospitalization and extended periods of unemployment. The Debtors filed their bankruptcy petition jointly pursuant to § 302(a) which allows the filing of a joint petition by any eligible individual “and such individual debtor’s spouse.” It is undisputed that each Debtor is an individual and is eligible to be a debtor in this court and to file a voluntary petition for relief.
 

 All trustee objections to confirmation were satisfied by the Debtors at the May 17 hearing on the Motion to Dismiss, and the Debtors’ proposed plan of reorganization currently is eligible for confirmation but for the pending Motion to Dismiss.
 

 The House Bipartisan Legal Advisory Group, acting through the United States Trustee, at the last minute orally requested a short continuance of the May 17 hearing in order to determine whether to intervene in this case to address the issues. Debtors consented and the court granted the request; yet, there have been no further pleadings and no challenge from the government to any issue raised by the Debtors. The government’s non-response to the Debtors’ challenges is noteworthy.
 

 JURISDICTION AND VENUE
 

 The court has jurisdiction over this bankruptcy case pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The Motion to Dismiss and objections to plan confirmation that were filed concurrently herein are core matters under 28 U.S.C. § 157(b)(2)(A) & (L) that the court may hear and determine pursuant to 28 U.S.C. § 157(b)(1).
 

 DISCUSSION
 

 The United States Trustee brought this Motion to Dismiss pursuant to § 1307(c) as the Bankruptcy Code basis for dismissal. Section 1307(c) provides, in relevant part:
 

 ... on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate,
 
 for cause,
 
 including—
 

 (1) unreasonable delay by the debtor that is prejudicial to creditors;
 

 (2) nonpayment of any fees and charges required under chapter 123 of title 28;
 

 (3) failure to file a plan timely under section 1321 of this title;
 

 (4) failure to commence making timely payments under section 1326 of this title;
 

 (5) denial of confirmation of a plan under section 1325 of this title and
 
 *571
 
 denial of a request made for additional time for filing another plan or a modification of a plan;
 

 (6) material default by the debtor with respect to a term of a confirmed plan;
 

 (7) revocation of the order of confirmation under section 1330 of this title; and denial of confirmation of a modified plan under section 1329 of this title;
 

 (8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;
 

 (9) only on request of the United States trustee, failure of the debt- or to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521;
 

 (10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521; or
 

 (11) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.
 

 11 U.S.C. § 1307(c) (emphasis added).
 

 The Motion to Dismiss is not based on any of the eleven causes for dismissal listed in § 1307(c). Instead, the “cause” asserted by the United States Trustee is that the joint petition was filed by two men. Although § 302(a) explicitly allows any qualified individual and such individual’s spouse to file a joint petition, the federal Defense of Marriage Act, Pub. L. No. 104-199, 110 Stat. 2419 (Sept. 21, 1996)
 
 codified in pertinent part
 
 at 1 U.S.C. § 7 (herein referred to as “DOMA”), defines the term “spouse” for the purpose of applying federal law, as “a person of the opposite sex who is a husband or a wife.” 1 U.S.C. § 7. DOMA elaborates:
 

 In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word “marriage” means only a legal union between one man and one woman as husband and wife, and the word “spouse” refers only to a person of the opposite sex who is a husband or a wife.
 

 Id.
 

 The United States Trustee cites two cases to support his position that this case should be dismissed “for cause” under § 1307(c). The first is
 
 In re Jephunneh Lawrence & Assoc. Chartered,
 
 63 B.R. 318, 321 (Bankr.D.C.1986), where the court determined that a joint petition was improperly filed by a corporation and its sole shareholder. The second is
 
 In re Malone,
 
 50 B.R. 2, 3 (Bankr.E.D.Mich.1985), where the court held that two debtors who cohab-itated but had never been legally married were not entitled to file a joint petition. The decisions are neither binding on this court nor pertinent to the Debtors in this case who are two people legally married to each other. The United States Trustee provides no relevant bankruptcy case law that is controlling on this court or that supports the trustee’s position. Instead, it is clear that the Motion to Dismiss simply asks for this case to be dismissed for cause under § 1307(c) based on DOMA unless the Debtors consent to “voluntarily sever their joint petition by a date certain.” Motion to Dismiss 4:17-18.
 

 A decision announced in
 
 In re Somers,
 
 No. 10-38296, 448 B.R. 677, 683 (Bankr.S.D.N.Y.2011), on the other hand, determined that there was insufficient cause to dismiss the Debtors’ joint chapter 7 bank
 
 *572
 
 ruptcy case under the “only for cause” provision of § 707(a) based on DOMA.
 
 [4]
 
 The same result was reached in
 
 In re Ziviello-Howell,
 
 Ch. 7 Case No. 11-22706,
 
 Civil Minutes,
 
 Docket No. 44 (Bankr. E.D.Cal. May 31, 2011) (McManus, J.) (attached to Debtors’ Reply as Tab G) (denying a motion to dismiss a joint chapter 7 case filed by two women married to each other because the court in exercise of its discretion determined from the record in the case that there was no “cause” for dismissal under § 707(a)). Similarly here, cause does not exist under § 1307(c). No creditor has sought dismissal. The trustee has cited no failure by the Debtors in performing their obligations under § 1307(c). The trustee seeks dismissal solely because the Debtors are a same-sex married couple, in violation of DOMA’s definition of “spouse” as the statute applies to Bankruptcy Code § 302(a).
 

 The Debtors have asserted that the equal protection component of the Fifth Amendment “keeps governmental deci-sionmakers from treating differently persons who are in all relevant respects alike.”
 
 Nordlinger v. Hahn,
 
 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) (citing
 
 F.S. Royster Guano Co. v. Virginia,
 
 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920) (“all persons similarly circumstanced shall be treated alike.”)) Debtors’ Opp. 6:1-5.
 

 Debtors assert:
 

 As a lawfully wedded couple, the Debtors are constitutionally indistinguishable from opposite-gender married couples who enjoy the rights and responsibilities attendant to joint bankruptcy petitions. DOMA’s irrational insistence to the contrary “is not within our constitutional tradition,” as it violates “the principles that government and each of its parts remain open on impartial terms to all who seek its assistance.”
 
 Romer v. Evans,
 
 517 U.S. 620, 633, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996). DOMA, as the U.S. Trustee seeks to apply it in this Bankruptcy Case, is inconsistent with the Constitution’s guarantee of equal treatment. The Motion to Dismiss should be denied and the Confirmation Objection should be overruled.
 

 Debtors’ Opp. 6:5-12.
 

 In response, the court must begin its consideration of the issues with the presumption that a duly enacted act of Congress is constitutional. The Debtors’ burden in challenging DOMA’s constitutionality is a heavy one, as is the burden on this court in considering the Debtors’ position.
 

 The court must consider Debtors’ challenge to DOMA in the context of the straightforward facts of this case and by analyzing the claims made by the Debtors. In that regard, the court finds particularly helpful the thoughtful words of Justice Jackson, concurring in a unanimous decision upholding a municipal ordinance on due process grounds in
 
 Railway Exp. Agency v. New York,
 
 336 U.S. 106, 112-13, 69 S.Ct. 463, 93 L.Ed. 533 (1949), where he elucidated his view of the distinction between the function of due process versus the function of equal protection under constitutional analysis:
 

 The burden should rest heavily upon one who would persuade us to use the due process clause to strike down a substantive law or ordinance.... Invalidation of a statute or an ordinance on due process grounds leaves ungoverned and ungovernable conduct which many people find objectionable.
 

 Invocation of the equal protection clause, on the other hand, does not dis
 
 *573
 
 able any governmental body from dealing with the subject at hand. It merely means that prohibition or regulation must have a broader impact. I regard it as a salutary doctrine that cities, states and the Federal Government must exercise their powers so as not to discriminate between their inhabitants except upon some reasonable differentiation fairly related to the object of regulation. This equality is not merely abstract justice. The framers of the Constitution knew, and we should not forget today, that there is no more effective practical guaranty against arbitrary and unreasonable government than to require that the principles of law which officials would impose upon a minority must be imposed generally. Conversely, nothing opens the door to arbitrary action so effectively as to allow those officials to pick and choose only a few to whom they will apply legislation and thus to escape the political retribution that might be visited upon them if larger numbers were affected. Courts can take no better measure to assure that laws will be just than to require that law be equal in operation.
 

 Railway Exp. Agency,
 
 336 U.S. 106 at 112-13, 69 S.Ct. 463.
 

 From the standpoint of this court, the foregoing principles require careful judicial scrutiny not only of the Debtors’ claim of right to file their joint bankruptcy petition but also of DOMA as applied to these Debtors who are seeking bankruptcy relief on an equal basis with other married debtors filing jointly under § 302(a). The court has carefully scrutinized the Motion to Dismiss and Debtors’ Opposition. The court’s examination and conclusions follow.
 

 Sexual orientation. With respect to the question of discrimination on the basis of sexual orientation, Debtors have stated that the issue is: “whether under the constitution legally married couples who are heterosexual may be granted more rights than legally married couples who are gay.” Debtors’ Opp. 14:11-12. Debtors believe they should not be singled out for differential treatment by DOMA; rather, that “[bjeing similarly circumstanced, they are entitled to be treated alike.” Debtors’ Opp. 14:16 (internal quotation marks omitted).
 

 Debtors offer strong authority for their position that the Fifth Amendment, like the Fourteenth, “includes an equal protection component” and that the Fifth Amendment in this respect “mirrors the Fourteenth Amendment.” Debtors’ Opp. 14: 2-16 & n. 8 (citing extensive case law). Debtors cite Justice O’Connor’s concurring opinion in
 
 Lawrence v. Texas,
 
 539 U.S. 558, 583, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), noting that “While it is true that the law applies only to conduct, the conduct targeted by [the statute at issue] is conduct that is closely correlated with being homosexual. Under such circumstances, [the] law is targeted at more than conduct. It is instead directed toward gay persons as a class.” Again, in 2010, the Supreme Court rejected the claim that discrimination against gay and lesbian individuals is no more than discrimination on the basis of “conduct” when it said, “Our decisions have declined to distinguish between status and conduct in this context.”
 
 Christian Legal Soc’y v. Martinez,
 
 — U.S. -, 130 S.Ct. 2971, 2990, 177 L.Ed.2d 838 (2010).
 

 Heightened scrutiny. The Debtors urge that heightened scrutiny of classifications based on sexual orientation is warranted and should be applied in this case, citing a letter from United States Attorney General Eric H. Holder, Jr., to Speaker of the House of Representatives John Boeh-ner, dated February 23, 2011 (the Holder Letter), attached to Debtors’ Opposition as
 
 *574
 
 Tab A. The Holder Letter concludes, in part:
 

 After careful consideration, including a review of my recommendation, the President has concluded that given a number of factors, including a documented history of discrimination, classifications based on sexual orientation should be subject to a heightened standard of scrutiny. The President has also concluded that Section 3 of DOMA, as applied to legally married same-sex couples, fails to meet that standard and is therefore unconstitutional.
 

 Holder Letter at 5. In determining the appropriate level of scrutiny, the Holder Letter cites and discusses four factors that should be considered:
 

 (1) whether the group in question has suffered a history of discrimination; (2) whether individuals exhibit obvious, immutable, or distinguishing characteristics that define them as a discrete group; (3) whether the group is a minority or is politically powerless; and (4) whether the characteristics distinguishing the group have little relation to legitimate policy objectives or to an individual’s ability to perform or contribute to society.
 

 Holder Letter at 2 (internal quotation marks omitted) (citing
 
 Bowen v. Gilliard,
 
 483 U.S. 587, 602-03, 107 S.Ct. 3008, 97 L.Ed.2d 485 (1987) and
 
 City of Cleburne v. Cleburne Living Ctr.,
 
 473 U.S. 432, 441-42, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).
 

 The court incorporates here a portion of the Debtors’ Opposition, page 22, line 7, through page 24, line 17, mostly verbatim but paraphrased in places, as follows:
 

 The Holder Letter demonstrates that DOMA cannot withstand heightened scrutiny. “Under heightened scrutiny, ‘a tenable justification must describe actual state purposes, not rationalizations for actions in fact differently grounded.’ ” Holder Letter at 4 (quoting
 
 United States v. Virginia,
 
 518 U.S. 515, 535-36, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996)). “In other words, under heightened scrutiny, the United States cannot defend [DOMA] by advancing hypothetical rationales, independent of the legislative record;” rather, the government is limited to “invoking Congress’ actual justification for the law.” Holder Letter at 4. The Holder Letter states that those actual justifications are indefensible.
 
 Id.
 
 at 4-5 & n. 7. The legislative record underlying DOMA is filled with “precisely the kind of stereotype-based thinking and animus the Equal Protection Clause is designed to guard against.”
 
 Id.
 
 at 4 (citing
 
 City of Cleburne,
 
 473 U.S. at 448, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (finding that “mere negative attitudes, or fear” are not permissible bases for discriminatory treatment);
 
 Romer v. Evans,
 
 517 U.S. 620, 635, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (rejecting the rationale that a statute was supported by “the liberties of landlords or employers who have personal or religious objections to homosexuality”);
 
 Palmore v. Sidoti,
 
 466 U.S. 429, 433, 104 S.Ct. 1879, 80 L.Ed.2d 421 (1984) (“Private biases may be outside the reach of the law, but the law cannot, directly or indirectly, give them effect.”));
 
 Dragovich v. U.S.,
 
 No. 10-01564, 2011 WL 175502, at *12 (N.D.Cal. Jan. 18, 2011) (“The animus toward, and moral rejection of, homosexuality and same-sex relationships are apparent in the Congressional record.”)
 
 [5]
 

 
 *575
 
 In addition to a close examination of the actual motivations and justifications for DOMA (rather than merely imagining hypothetical rationales), heightened scrutiny is distinct from rational basis review insofar as the “analysis is as-applied rather than facial.”
 
 Witt v. Dep’t of Air Force,
 
 527 F.3d 806, 819 (9th Cir.2008). Thus, when the Ninth Circuit in
 
 Witt
 
 applied heightened scrutiny to the “Don’t Ask, Don’t Tell” law that discriminated against gay and lesbian members of the armed services, the court refused the government’s invitation to limit its inquiry to whether the military’s policy “has some hypothetical, post-hoc rationalization in general,” such as “unit cohesion” or “troop morale.”
 
 Id.
 
 Instead, the Ninth Circuit’s heightened scrutiny review required the government to demonstrate that “a justification exists for the application of the policy
 
 as applied to Major Witt.” Id.
 
 (emphasis added).
 
 See In re Golinski I, 587
 
 F.3d 901, 904 (9th Cir.2009) (describing the holding in
 
 Witt
 
 as requiring the military’s policy “to survive heightened scrutiny as applied to each service member discharged”). The case was remanded to the district court for trial on whether application of “Don’t Ask, Don’t Tell” “specifically to Major Witt significantly furthers the government’s interest and whether less intrusive means would achieve substantially the government’s interest.”
 
 Witt,
 
 527 F.3d at 821.
 
 [6]
 

 As in
 
 Witt,
 
 heightened scrutiny should be the standard in this case; the requisite analysis should be “as-applied rather than facial.”
 
 See id.
 
 at 819. Thus, the question the court must focus on is whether dismissing the Debtors’ bankruptcy case pursuant to DOMA “advances an important governmental interest.”
 
 See id.
 
 at 821.
 

 Following the direction of the Ninth Circuit in
 
 Witt,
 
 the court here discerns no valid, defensible governmental interest advanced by dismissing the Debtors’ bankruptcy case or requiring, as the Motion to Dismiss suggests, that the Debtors consent [under the duress of DOMA] to “voluntarily sever their joint petition by a date certain.”
 
 See
 
 Motion to Dismiss 4:17-18. The Debtors are lawfully married and are otherwise fully qualified to be joint debtors pursuant to § 302(a) of the Bankruptcy Code. The court concludes that dismissal of the bankruptcy case will not advance any of the following governmental interests:
 

 • Encouraging responsible procreating and child-bearing (the Debtors have no children, and even if they did, there is no basis in the evidence or authorities to conclude that Debtors’ joint bankruptcy filing would affect Debtors’ children (if any, later) differently from children in other “traditional” joint bankruptcy cases);
 

 • Defending or nurturing the institution of traditional heterosexual marriage (the Debtors are already married to each other, and allowing them to pro
 
 *576
 
 ceed jointly in this bankruptcy ease cannot have the slightest cognizable effect on anyone else’s marriage);
 

 • Defending traditional notions of morality (the Debtors’ joint bankruptcy filing is in no sense discernible to the court to be a validly challengeable affront to morality, traditional or otherwise, under the Fifth Amendment); or
 

 • Preserving scarce resources (no governmental resources are implicated by the Debtors’ bankruptcy case different from the resources brought to bear routinely in thousands upon thousands of joint bankruptcy cases filed over the years).
 

 See Gill v. Office of Pers. Mgmt.,
 
 699 F.Supp.2d 374, 388 (D.Mass.2010) (discussing the reasons Congress offered for passing DOMA but noting that those reasons were disavowed by the government “[f]or purposes of [the Gill] litigation”).
 

 The court hereby adopts the Holder Letter and the Debtors’ Opposition (as discussed above). Both succinctly and cogently analyze the issues on this Motion to Dismiss. The court concludes that the Attorney General’s and Debtors’ analyses are sound and consistent with the legislative history of DOMA and present a sensible view of the standards that this court should apply to its constitutional analysis.
 

 Discrimination against lesbians and gay men. The Debtors have demonstrated through additional authoritative case law that lesbians and gay men have experienced a history of discrimination.
 
 High Tech Gays v. Defense Indus. Sec. Clearance Office,
 
 895 F.2d 563, 573 (9th Cir.1990) (acknowledging that “homosexuals have suffered a history of discrimination”);
 
 Witt,
 
 527 F.3d at 824-25 (noting that homosexuals have “experienced a history of purposeful unequal treatment”);
 
 Perry v. Proposition 8 Official Proponents,
 
 587 F.3d 947, 954 (9th Cir.2009) (pointing out the difficulty in denying that gays and lesbians have experienced discrimination in the past in light of the Ninth Circuit’s ruling in
 
 High Tech Gays); Perry v. Schwarzenegger,
 
 704 F.Supp.2d 921, 981-82 (N.D.Cal.2010) (acknowledging extensive evidence of public and private discrimination against gays and lesbians in California and throughout the United States).
 
 See, Perry,
 
 704 F.Supp.2d at 991-1003, (illustrating the extent and depth of the trial evidence considered and discussed by the district court in that court’s conclusions of law).
 
 [7]
 

 Sexual orientation is a “defining and immutable characteristic.” Debtors cite important precedent determining that sexual orientation is recognized as a defining and immutable characteristic.
 
 Hernandez-Montiel v. Immigration and Naturalization Serv.,
 
 225 F.3d 1084, 1093 (9th Cir.2000) (finding that “Sexual orientation and sexual identity are immutable; they are so fundamental to one’s identity that a person should not be required to abandon them.”), overruled in part on other grounds by
 
 Thomas v. Gonzales,
 
 409 F.3d 1177 (9th Cir.2005);
 
 Karouni v. Gonzales,
 
 399 F.3d 1163, 1173 (9th Cir.2005) (agreeing with
 
 Hemandez-Montiel
 
 and acknowledging that homosexuality is “a fundamental aspect of ... human identity....”);
 
 Perry,
 
 704 F.Supp.2d at 966 (“No credible evidence supports a finding that an individual may, through conscious decision, therapeutic intervention or any other method, change his or her sexual orientation.”).
 

 
 *577
 
 Lesbians and gay men face significant political obstacles. Debtors’ evidence and the authorities cited establish conclusively that lesbians and gay men face significant political obstacles.
 
 Romer,
 
 517 U.S. 620, 116 S.Ct. 1620, 134 L.Ed.2d 855 (1996) (overturning a Colorado state constitutional amendment that prohibited all legislative, executive, or judicial action designed to protect homosexual persons from discrimination);
 
 Lawrence,
 
 539 U.S. 558, 123 S.Ct. 2472 (overturning a Texas statute making it a crime for two persons of the same sex to engage in certain intimate sexual conduct);
 
 Strauss v. Horton,
 
 46 Cal.4th 364, 93 Cal.Rptr.3d 591, 207 P.3d 48 (2009) (upholding California’s Proposition 8 prohibiting same-sex marriage against a state constitutional challenge);
 
 Lofton v. Sec’y of Dep’t of Children & Family Servs.,
 
 358 F.3d 804 (11th Cir.2004) (upholding Florida statute barring same-sex couples from adopting);
 
 Citizens for Equal Protection v. Bruning,
 
 455 F.3d 859 (8th Cir.2006) (upholding Nebraska state constitutional amendment establishing that two persons of the same sex could not unite in a “civil union, domestic partnership, or other similar same-sex relationship”);
 
 Perry,
 
 704 F.Supp.2d at 943 (crediting expert testimony that “gays and lesbians possess less power than groups [traditionally] granted judicial protection”).
 

 Sexual orientation is irrelevant to an individual’s ability to contribute to society. The Debtors demonstrate persuasively through significant case law the important contributions that gays and lesbians have made to our society.
 
 Watkins v. U.S. Army,
 
 875 F.2d 699, 725 (9th Cir.1989)
 
 (en
 
 banc) (Norris, J., concurring) (“Sexual orientation plainly has no relevance to a person’s ability to perform or contribute to society.”) (internal quotation marks omitted);
 
 Perry,
 
 704 F.Supp.2d at 1002 (concluding that “by every available metric, opposite-sex couples are not better than their same-sex counterparts; instead, as partners, parents and citizens, opposite-sex couples and same-sex couples are equal”).
 

 Gender discrimination. The Debtors in their Opposition have presented to the court persuasive decisional authority supporting the proposition that DOMA violates standards of due process and equal protection as established under the Fifth Amendment.
 

 In
 
 Reed v. Reed,
 
 404 U.S. 71, 74, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), the Supreme Court unanimously struck down an Idaho statute as a violation of the equal protection clause of the Fourteenth Amendment, concluding that an “arbitrary preference established in favor of males by ... the Idaho Code cannot stand in the face of the Fourteenth Amendment’s command that no State deny the equal protection of the laws to any person within its jurisdiction.”
 

 In
 
 Orr v. Orr,
 
 440 U.S. 268, 278-79, 99 S.Ct. 1102, 59 L.Ed.2d 306 (1979), the Supreme Court struck down an Alabama statute authorizing the imposition of alimony obligations on husbands but not on wives, thereby disallowing differential treatment on the basis of sex, under the equal protection clause of the Fourteenth Amendment. The Debtors’ argument is persuasive that DOMA’s discrimination here against a same-sex married couple warrants the same scrutiny and result.
 

 In
 
 Califano v. Westcott,
 
 443 U.S. 76, 83-84, 99 S.Ct. 2655, 61 L.Ed.2d 382 (1979), where a federal program provided unemployment benefits to men but not women, the Supreme Court found the law to be gender-biased where it denied benefits on the basis of the gender of a qualifying parent, a wage earner who happened to be a woman and not a man. Similarly here, this court concludes that DOMA is gender-
 
 *578
 
 biased because it is explicitly designed to deprive the Debtors of the benefits of other important federal law solely on the basis that these debtors are two people married to each other who happen to be men. Further,
 
 nothing
 
 about the Debtors’ gender affects their fitness for bankruptcy protection available to opposite-sex marital partners. Spouses should be treated equally, whether of the opposite-sex variety or the same-sex variety, under heightened scrutiny and the principles announced by the Supreme Court and other lower court rulings discussed above.
 

 These views have found significant recent added support in the Ninth Circuit on issues specifically affecting the Debtors in this case. For example, in
 
 Perry,
 
 704 F.Supp.2d at 996, the district court recognized that “[sjexual orientation discrimination can take the form of [prohibited] sex discrimination.” Findings of prohibited sex discrimination were made in
 
 In re Levenson I,
 
 560 F.3d 1145, 1147 (9th Cir.2009);
 
 Perry,
 
 704 F.Supp.2d at 921;
 
 see also In re Golinski,
 
 587 F.3d 956, 957 (9th Cir.2009)
 
 (Golinski II).
 

 Rational basis review. The goals of DOMA, according to its congressional proponents, include “encouraging responsible procreation and child-bearing,” “defending and nurturing traditional heterosexual marriage,” “defending traditional notions of morality,” and “preserving scarce resources.” Debtors’ Opp. 27:20-23;
 
 see
 
 Debtors’ Opp. 24:18-32:10. Debtors cite prior judicial determinations that DOMA does not withstand even a rational basis review with respect to these governmental interests.
 
 In re Levenson I,
 
 560 F.3d at 1149-51;
 
 In re Levenson II,
 
 587 F.3d 925, 931-33 (9th Cir.2009);
 
 Dragovich
 
 No. 10-01564, 2011 WL 175502, at *13, *14;
 
 Gill,
 
 699 F.Supp.2d at 397.
 
 See
 
 Debtors’ Opp. 21:18-24:17. The Debtors assert that as to each of these issues no judicial determination has fallen on the side of upholding the constitutionality of DOMA. Debtors’ Opp. 1:24-2:1-13. The United States Trustee has not cited any authoritative or persuasive decisional authority supporting the constitutional validity of DOMA as applied to the Debtors.
 

 The interests asserted by Congress do not support DOMA’s validity. “The House report on DOMA identified three interests advanced by the statute: the government’s interest in defending and nurturing the institution of traditional heterosexual marriage; the government’s interest in defending traditional notions of morality; and the government’s interest in preserving scarce government resources.”
 
 See Levenson II,
 
 587 F.3d at 932 (citing H.R. Rep. No. 104-664, at *12-*18) (internal quotation marks omitted). For the reasons stated above, none of these interests stands up to any level of scrutiny.
 

 For example, the joint petition of the Debtors will have no effect on procreation or child-bearing. It would not appear to be fair or rational for the court to conclude that allowing the Debtors to file a joint bankruptcy petition will in any way harm any marriage of heterosexual persons. Creditors in Debtors’ bankruptcy case have not filed any support for the Motion to Dismiss this case; creditors in this case, as in other cases, simply hope to be paid what they are owed. Beyond that, no creditor’s notion of morality concerning a same-sex marriage or what any such creditor may think about homosexuality or the question of human sexual orientation has any valid bearing on the creditor’s rights in this case.
 

 This court can conceive of no fair, just and rational basis to conclude that DOMA will contribute to the achievement of the goal of preserving scarce government resources and finds no basis in the evidence
 
 *579
 
 or record in this case to credit such a proposition.
 

 Although individual members of Congress have every right to express their views and the views of their constituents with respect to their religious beliefs and principles and their personal standards of who may marry whom, this court cannot conclude that Congress is entitled to solemnize such views in the laws of this nation in disregard of the views, legal status and living arrangements of a significant segment of our citizenry that includes the Debtors in this case. To do so violates the Debtors’ right to equal protection of those laws embodied in the due process clause of the Fifth Amendment.
 

 This court cannot conclude from the evidence or the record in this case that any valid governmental interest is advanced by DOMA as applied to the Debtors. Debtors have urged that recent governmental defenses of the statute assert that DOMA also serves such interests as “preserving the status quo,” “eliminating inconsistencies and easing administrative burdens” of the government. None of these
 
 post hoc
 
 defenses of DOMA withstands heightened scrutiny.
 
 See
 
 Debtors’ Opp. 32:11-34:15. In the court’s final analysis, the government’s only basis for supporting DOMA comes down to an apparent belief that the moral views of the majority may properly be enacted as the law of the land in regard to state-sanctioned same-sex marriage in disregard of the personal status and living conditions of a significant segment of our pluralistic society. Such a view is not consistent with the evidence or the law as embodied in the Fifth Amendment with respect to the thoughts expressed in this decision. The court has no doubt about its conclusion: the Debtors have made their case persuasively that DOMA deprives them of the equal protection of the law to which they are entitled. The court is of the opinion that the Debtors have met their high burden of overcoming the presumption of the constitutionality of DOMA.
 

 CONCLUSION
 

 The Debtors have demonstrated that DOMA violates their equal protection rights afforded under the Fifth Amendment of the United States Constitution, either under heightened scrutiny or under rational basis review. Debtors also have demonstrated that there is no valid governmental basis for DOMA. In the end, the court finds that DOMA violates the equal protection rights of the Debtors as recognized under the due process clause of the Fifth Amendment.
 

 No one expressed the Debtors’ view as pertinent to this simple bankruptcy case more eloquently and profoundly than Justice William O. Douglas in the concluding paragraph of his opinion for the majority in
 
 Griswold v. Connecticut,
 
 381 U.S. 479, 486, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965):
 

 We deal with a right of privacy older than the Bill of Rights — older than our political parties, older than our school system. Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not in political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions.
 

 Id.
 

 Upon consideration of the pleadings and all other materials filed in this case, and for good cause shown, the court finds that the Debtors satisfy every legal requirement to pursue their joint petition as filed pursuant to § 302(a). For the reasons stated herein and in the Debtors’ Opposition to the Motion and Debtors’ supporting
 
 *580
 
 authorities, the Motion to Dismiss Debtors’ chapter 13 case based on § 1307(c) is denied.
 

 IT IS SO ORDERED.
 

 [1]
 

 . Motion, 3:17-18; Marriage Certificate, Ex. 3 to the United States Trustee’s Request for Judicial Notice.
 

 [2]
 

 . The court takes judicial notice that approximately 18,000 same-gender couples were legally wed in California prior to the November 2008 passage of California Proposition 8 and most of them may well remain validly married for all purposes under California law. Thus, the Debtors would seem to be members of a significant segment of California citizens of the United States.
 
 See Perry v. Schwarzenegger,
 
 704 F.Supp.2d 921, 928 (N.D.Cal.2010).
 

 [3]
 

 .
 
 See
 
 declarations of Balas and Morales, Debtors' Opp. 36-51.
 

 [4]
 

 .
 
 Somers
 
 is now on appeal.
 

 [5]
 

 . The supposed governmental interest offered in support of DOMA fails even the lowest standard of constitutional scrutiny (rational basis), and thus necessarily could not meet a heightened standard.
 
 See In re Levenson I,
 
 560 F.3d 1145, 1149-51 (9th Cir.2009);
 
 In re Levenson II,
 
 587 F.3d 925, 931-33 (9th Cir.2009);
 
 Dragovich v. U.S.,
 
 No. 10-01564, 2011
 
 *575
 
 WL 175502, at *13, *14 (N.D.Cal. Jan. 18, 2011);
 
 Gill v. Office of Pers. Mgmt.,
 
 699 F.Supp.2d 374, 387 (D.Mass.2010).
 

 [6]
 

 . On remand, and after a full trial on the merits, the district court held that “the suspension and discharge of Margaret Witt did not significantly further the important government interest in advancing unit morale and cohesion,” and ordered Major Witt reinstated.
 
 Witt v. Dep’t of Air Force,
 
 739 F.Supp.2d 1308, 1315-17 (W.D.Wash.2010) ("The evidence before the Court is that Major Margaret Witt was an exemplary officer. She was an effective leader, a caring mentor, a skilled clinician, and an integral member of an effective team. Her loss within the squadron resulted in a diminution of the unit's ability to carry out its mission. Good flight nurses are hard to find.”).
 

 [7]
 

 . The district court's decision is now on appeal to the United States Court of Appeals for the Ninth Circuit.